IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MICHAEL C. CARUSO, MD., | |
| Plaintiff, | |
| | CIVIL NO. _____ |
| v. | |
| AMERICAN FAMILY CARE GEORGIA, LLC, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## COMPLAINT

Plaintiff Michael C. Caruso, MD ("Dr. Caruso") files this Complaint against American Family Care Georgia, LLC ("American Family" or "Defendant"), seeking damages, equitable relief, attorneys' fees, and all other remedies available under the applicable law, as set forth below.

## Nature of Complaint

1.

This action is brought pursuant to the Americans With Disabilities Act, as amended, 42 U.S.C. § 12101 et seq. ("ADA"), seeking back pay, front pay in lieu of reinstatement, compensatory and punitive damages and other available relief based

on disability discrimination, failure to accommodate, and retaliation that Dr. Caruso experienced during and upon the termination of his employment as physician for American Family Care Georgia, LLC.

## The Parties

2.

Dr. Caruso is a citizen of the United States and a resident of the State of Georgia, currently residing in Forsyth County.  He is a former five-year employee of Defendant American Family, where he worked at its Alpharetta Clinic for about two and half years.  Dr. Caruso was, at all times relevant hereto, an employee within the meaning of the ADA. Dr. Caruso submits himself to the jurisdiction of this Court.

3.

Defendant American Family is a foreign limited liability company which is organized under the laws of the State of Alabama with its principal place of business in Birmingham, Alabama.  American Family is registered to do business in Georgia as a foreign corporation and in fact transacts ongoing business operations in Georgia. American Family may be served with process through its Alabama registered agent for service of process, Donald B Irwin, at 3700 Cahaba Beach Road, Birmingham, Alabama 35242.

2

**Jurisdiction and Venue**

4.

Dr. Caruso's claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 42 U.S.C. §2000e-5(f)(3) and other applicable law.

5.

This Court has personal jurisdiction over American Family under the Georgia Long-Arm Statute because it is registered to and does in fact transact business in Georgia, and maintains ongoing business operations at its facility in Alpharetta, Georgia, and other facilities throughout Georgia. Additionally, this Court also has personal jurisdiction over Plaintiff's claims because they arise out of tortious acts committed by Defendant in this State.

6.

This is an appropriate venue for all of Dr. Caruso's claims pursuant to 28 U.S.C. § 1391 and 42 U.S.C. §2000e-5(f)(3) as the judicial district in which the events and omissions, including unlawful employment acts, giving rise to Dr. Caruso's claims occurred.

## Administrative Proceedings

### 7.

Dr. Caruso filed a charge of discrimination with the EEOC on March 31, 2019 setting forth claims of disability, sex, and age discrimination and retaliation in violation of the ADA and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* That Charge was filed less than 180 days after the acts of discrimination and retaliation identified in the Charge.

### 8.

The EEOC issued a Notice of Right to Sue on August 25, 2020, and Dr. Caruso files this Complaint within 90 days of his receipt of that Notice.

## The Facts

### Dr. Caruso's Medical Leave

### 9.

Dr. Caruso began his employment as a physician for American Family on, or about, April 29, 2014. On, or about, February 2015, Dr. Caruso was assigned to American Family's Woodstock Clinic, and he transferred to Defendant's Alpharetta Clinic on, or about, September 2016. Throughout his employment, he provided quality care to his patients and remained an effective contributing member of his team. However, American Family terminated Dr. Caruso's employment due to his disability in January 2019, with a retroactive effective date of December 16, 2018.

4

10.

In late June 2018, Dr. Caruso began experiencing debilitating back pain caused by the progression of his spinal stenosis. He required spinal fusion surgery, which was scheduled for surgery on, or about, July 9, 2018. American Family approved his request for FMLA leave from July 2, 2018 to August 19, 2018.

11.

Dr. Caruso's spinal fusion surgery took place as scheduled on July 9. After he was released from the hospital, his condition deteriorated due to a staph infection contracted during the surgery. He went into septic shock and consequentially cardiac arrest. Dr. Caruso was admitted to the cardiac intensive care unit on July 14, where he coded at least four times, developed pneumonia, and was on a ventilator for three weeks. After spending more than six weeks in the hospital, he was finally discharged on August 31.

12.

While he remained hospitalized, Dr. Caruso requested that American Family extend his unpaid medical leave to September 20, under his doctor's warning that a September 20 return date "may have to be reassessed." Due to the necessity of his complicated recovery, Dr. Caruso was required to request an extension of his leave through December 1, 2018.

13.

In November, Dr. Caruso unexpectedly suffered a ruptured colon that necessitated emergency surgery.  Upon his discharge from the hospital on November 27, Dr. Caruso was not able to return to work on December 1, as previously approved. While he was on leave, and unbeknownst to Dr. Caruso, American Family replaced Dr. Caruso with a younger, female doctor.

<u>Dr. Caruso's Request to Extend His Leave as an Accommodation</u>

14.

On November 30, Dr. Caruso received a phone call from American Family's Vice President of Human Resources, James G. Kerr. Mr. Kerr advised Dr. Caruso that American Family's policy allows for a maximum of 24 weeks of leave, which would be reached on December 16. Dr. Caruso informed Mr. Kerr that his physician had not provided an anticipated return-to-work date at that time but that he expected to have that information from his physician in a few days. Instead of determining when Dr. Caruso would be able to return to work, Mr. Kerr told Dr. Caruso that based on his own personal experience with a ruptured colon, it would be at least six months before Dr. Caruso would be able to return to work. Therefore, he advised Dr. Caruso to resign his employment from American Family and apply for long-term disability benefits. Dr. Caruso responded that he had no intention of resigning and that he only needed a short time to recover.

6

15.

On December 4, four days after Mr. Kerr advised him to resign, Dr. Caruso's physician, Dr. Wolozin, told Dr. Caruso that he would be able to resume his fulltime duties by February 15, 2019. In the Healthcare Provider Statement completed for the benefit of Dr. Caruso's employer, it noted a "lifting limit of 10 lbs" and that Dr. Caruso would need "to work at office closest to his home to avoid long or prolonged travel."

16.

On December 13, Dr. Caruso emailed the Healthcare Provider Statement to American Family, formally requesting an extension of leave "as a reasonable accommodation under the Americans with Disabilities Act ('ADA')."  He also reminded the company that the ADA requires employers to make exceptions to their maximum-leave policies whenever necessary to provide a reasonable accommodation.

Dr. Caruso's Unlawful Termination as Physician with American Family

17.

On December 17, the day after the 24-week maximum-leave limit, Mr. Kerr called Dr. Caruso to discuss his request for reasonable accommodation.  Mr. Kerr did not inform or even suggest to Dr. Caruso that his employment had been terminated, although it has been terminated weeks earlier.  Instead, Mr. Kerr

7

pretended to contemplate Dr. Caruso's requested leave extension, even going so far as to agree that the extension of leave Dr. Caruso had requested was a reasonable accommodation that American Family would provide. He went on say that he would be reaching out to Dr. Caruso's physician, Dr. Wolozin, to discuss any other necessary limitations.

18.

On January 6, 2019 – several weeks after the December 17 phone call described above – Dr. Caruso received a letter from Mr. Kerr via U.S. mail.  The letter was dated November 30, 2018, but Mr. Kerr had not mentioned it in during their December 17 call or at any other time. Despite regular email communications with Defendant, it also had not been sent to Dr. Caruso's email address.  The letter inaccurately described the November 30, 2018 telephone conversation, stating that Dr. Caruso had said he would "be unable to return to work in the foreseeable future" (he said no such thing but instead indicated only that he was awaiting his physician's advice on a return-to-work date) and that Dr. Caruso had "agreed that applying for long-term disability was the best option" (which, again, he did not).

The November 30 letter also stated that Dr. Caruso would reach his "maximum leave limit" of 24 weeks on December 16, "at which time [American Family] must terminate [his] employment under our current policies.  Your reason for termination will be listed as Disability/Leave Exhaustion."

19.

Given the December 17 conversation with Mr. Kerr, Dr. Caruso assumed this November 30 letter was deemed moot by his December 13 ADA accommodation request.

20.

On January 15, 2019, Dr. Caruso attempted to fill a personal prescription but was informed that his health insurance benefits had been cancelled. It was only at this time that he learned his employment had been terminated effective December 16, 2018. After speaking with Mr. Kerr regarding the issue, Mr. Kerr only offered up the possibility of reversing his termination following an evaluation of his requested accommodations and limitations.

21.

Almost a week and a half later, on January 24, Mr. Kerr and another American Family representative finally contacted Dr. Wolozin, as Mr. Kerr had indicated he would do over a month earlier during the December 17 phone call described above. Dr. Wolozin confirmed to Mr. Kerr during this January 24 call that Dr. Caruso would be well enough to return to work fulltime as a physician at the Alpharetta Clinic by February 15.

22.

Despite Dr. Wolozin's medical clearance for Dr. Caruso to return to full duty, Mr. Kerr sent a letter to Dr. Caruso on January 25 stating that American Family was denying his request for a reasonable accommodation. It mischaracterized his request to extend his unpaid leave to February 15 as a request "for additional leave of an indefinite duration," and said it included "work restrictions…which are unduly burdensome."

23.

The only "work restrictions" listed with regard to Dr. Caruso's planned return to work consisted of Dr. Wolozin's December 13 Healthcare Provider Statement which indicated that Dr. Caruso should not life more than 10 pounds and should work at the "office closest to his home."

24.

Lifting over 10 pounds is not an essential function of the physician position at American Family that Dr. Caruso held, and he does not recall ever having to lift more than 10 pounds during the time that he worked there.

25.

Dr. Wolozin's suggestion that Dr. Caruso would need "to work at office closest to his home," was not a "restriction" at all because the office closest to Dr.

Caruso's home is the same Alpharetta Clinic where he had been working prior to his leave.

26.

As expected, Dr. Caruso was sufficiently recovered to return to work fulltime and perform all the essential function of his job as an American Family physician on February 15, 2019.

27.

There was no job for Dr. Caruso to return to, because American Family had terminated his employment effective December 16 without considering his request for 8 additional weeks of leave as a reasonable accommodation under the ADA.

## COUNT I
## DISCRIMINATION IN VIOLATION OF THE ADA

28.

Plaintiff incorporates by reference all the preceding paragraphs of the Complaint.

29.

Between July 2018 and February 15, 2019, Dr. Caruso had a disability under the ADA, consisting of one or more physical conditions that substantially limited one or more major life activities.

30.

Defendant had knowledge of Dr. Caruso's disability.

11

31.

Defendant permitted Dr. Caruso to take leave from work as a reasonable accommodation for his disability.

32.

Defendant discriminated against Dr. Caruso on the basis of his disability by refusing to properly consider and/or grant limited additional leave from work as a reasonable accommodation for his disability.

33.

Defendant also discriminated against Dr. Caruso on the basis of his disability by refusing to allow him to return to work after his need for leave as a reasonable accommodation ceased.

34.

Instead of allowing him to return to work, Defendant terminated Dr. Caruso's employment.

35.

Defendant's decision to terminate Dr. Caruso's employment was based on his disability and/or the fact that he had taken and requested leave as a reasonable accommodation under the ADA.

36.

Defendant's termination of Dr. Caruso's employment constitutes disability discrimination and retaliation under the ADA.

37.

Defendant's stated reason for Dr. Caruso's discharge – that he had exhausted his leave entitlement under Defendant's facially discriminatory policy –  is a pretext for unlawful discrimination.

38.

Defendant acted with reckless disregard for Dr. Caruso's rights under federal law.

39.

As a direct and proximate result of Defendant's unlawful and discriminatory employment practices, Dr. Caruso has suffered and continues to suffer lost earnings and benefits including medical insurance, emotional distress, inconvenience, humiliation, and other indignities compensable under the ADA, for which American Family is liable.

40.

Defendant acted maliciously, willfully, wantonly, oppressively, or recklessly, toward Dr. Caruso, authorizing a punitive damages award against American Family.

## COUNT II
## RETALIATION IN VIOLATION OF THE ADA

41.

Plaintiff incorporates by reference all the preceding paragraphs of the Complaint.

42.

Dr. Caruso's requests for reasonable accommodation in the form of limited extensions of leave from work constitute protected activity under the ADA.

43.

Dr. Caruso suffered adverse employment action when American Family refused to accommodate his reasonable leave extension, mischaracterized various communications with Dr. Caruso and his physician in order to cover up their unlawful actions, replacing Dr. Caruso before the end of his medical leave, and ultimately terminated his employment regardless of Dr. Caruso's ability to perform his job functions.

44.

There is a causal connection between Dr. Caruso's protected activity and the adverse employment action he suffered.

45.

Dr. Caruso suffered damages as a direct and proximate result of the adverse action taken against him based on his engagement in protected activity.

14

46.

Plaintiff suffered damages as a result of Defendant's discriminatory acts, all as to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and requests the following relief:

a) A judgment enjoining Defendant from engaging in unlawful employment practices and awarding Plaintiff back pay and either reinstatement or front pay in lieu thereof as provided by Title VII, 42 U.S.C. § 2000e-5 and other applicable law;

b) A judgment awarding Plaintiff compensatory and punitive damages, in an amount to be determined by the enlightened conscience of the jury;

c) Award Plaintiff his attorney's fees;

d) Award Plaintiff pre-judgment and post-judgment interest; and

e) Award Plaintiff all other and further relief as available under applicable law and as this Court deems just and proper.

Respectfully submitted this 23rd day of November, 2020.

s/ John T. Stembridge
John T. Stembridge
Georgia Bar No. 678605
Lisa D. Taylor
Georgia Bar No. 235529

**Stembridge Law LLC**

2951 Piedmont Road NE, Suite 200
Atlanta, GA 30305
Telephone: 404-604-2691
john@stembridgelaw.com
lisa@stembridgelaw.com

Counsel for Plaintiff Michael D. Caruso, MD